PARK AND WIFE *v.* MEEK *et als.*

PRACTICE.  *An order dissolving injunction by Chancery Court will not be super-
seded.*  An order of the Chancery Court dissolving an injunction
previously granted inhibiting the execution of a decree for the sale of
land, cannot be superseded under the Code, sec. 3933.

FROM JEFFERSON—MOTION.

VANDYKE, COOK & VANDYKE for complainants

MEEK, SWAN, HENDERSON & JOUROLMAN for de-
fendants.

COOPER, J., delivered the opinion of the court.

Under a bill filed by S. W. Inman and F. B.
Cowan, executors of Robert Hamilton, deceased, against
the heirs and creditors of their testator for the ad-
ministration of the estate, a house and lot was sold by
the clerk and master as the property of the estate, on
the 6th of July, 1868, and bought by a third person,
who transferred his bid to complainant Inman.  In-
man made the cash payment required, and gave his
note with security, at six months, for $949, the resi-
due of the purchase price.  On the 15th of January,
1876, this note remaining unpaid, judgment was taken
for the amount due, and the clerk and master was
directed, if the money was not paid in sixty days, to
sell the land in satisfaction thereof, but suspended the
sale until the final hearing of the cause.  On the

10th of January, 1877, the cause was finally heard, and a judgment rendered against Inman and Cowan, executors, for $998. This balance was, it seems, found by including in the account, as a charge against the executors, the amount due from Inman on the purchase money for the land, and the court ordered that when this balance was collected the clerk and master should enter satisfaction of the judgment on the note; and collection of the latter judgment was suspended until the next term, "with the view of enforcing the recovery in this case in relief of the security of Inman in said judgment." At the next term the clerk and master was directed to collect the purchase note judgment by a sale of the land. In the meantime, the complainant Cordelia, who afterwards intermarried with her co-complainant Park, bought the house and lot from Inman, has paid the greater part of the price, and given her note for the residue, which has been assigned before maturity to a *bona fide* purchaser. This bill was filed first against the clerk and master alone, afterwards, by amendment, against him and the heirs of Robt. Hamilton, deceased, to perpetually enjoin the judgment against Inman and his surety, upon the ground that it is virtually paid by the judgment against the executors, one of them, Cowan, it is alleged, being solvent, although it is admitted Inman is insolvent. The executors are not made parties. An injunction was granted as prayed on the filing of the bill, but the Chancellor afterwards dissolved it, whereupon the complainants applied to one of the judges of this court for a *supersedeas* of the order of dissolution

under the Code, secs. 3933, 4513, which was granted. The motion now is to dismiss the petition.

It has been repeatedly held by this court that the sections of the Code cited do not apply to an order granting a temporary injunction, or an order dissolving such an injunction. *McMinnville & Manchester R. R. Co.* v. *Huggins,* 7 Col., 217; *Mabry* v. *Ross,* 1 Heis., 769; *Redmond* v. *Redmond,* 1 Tenn. Leg. Rep., 361. In the last of these cases, it was well said that to supersede an order dissolving an injunction would be, in effect, to grant an injunction. For it could only be done by holding that the complainant was entitled to the injunction asked for. If, however, the Chancellor had refused the injunction in the first instance, it would scarcely be contended that the application could be renewed before us by superseding his order of refusal. Whether desirable or not, the act of 1851, carried into the Code in the sections cited, was not designed to give this court immediate supervisory control over the *fiats* and orders of the inferior courts and judges, in the grant or refusal of extraordinary process, or over such orders as are only meant to preserve or impound property pending litigation, without adjudging rights. It was intended to meet those cases, fortunately rare, where, in advance of a hearing on the merits, from which the losing party may take an appeal, the inferior court makes an order actually determining rights, and orders its enforcement. The writer of this opinion knows that the act owes its origin to the making of such an order in the Chancery Court for the county of Shelby, by which one of the litigants

was required to pay several thousand dollars within a given time, and, on failure, that execution should issue. To extend the act to orders meant to preserve the *status quo,* without settling rights, or to leave parties where they were before any order whatever was made, would be to strain the language used beyond its obvious sense